IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BENJAMIN MOSLEY, *et al.* § <br> § <br> *Plaintiffs,* § <br> § <br> v. § <br> § <br> BRISTOW U.S., LLC and BRISTOW § <br> HOLDINGS U.S., INC. § <br> § <br> *Defendants*. § | CIVIL ACTION NO. 2:23-cv-02674 <br><br><br><br> DISTRICT JUDGE JAY C. ZAINEY <br><br><br><br> MAGISTRATE JUDGE EVA DOSSIER |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs' Opposition confirms that the parties do not dispute any material facts and the RLA's applicability is ripe for decision. Since the Opposition does not contest that Bristow is "engaged in interstate or foreign commerce" or that Plaintiffs' duties are directly related to air transportation, the sole remaining issue is whether Bristow is a "common carrier by air" under the RLA. MSJ 10–18. If so, Plaintiffs' claims are barred. Opp. 12 (describing the RLA exemption to the FLSA). The undisputed summary judgment evidence and legal precedent establish that Bristow is a common carrier by air, and the Opposition does not identify any facts or law that disturb that reality.

The Fifth Circuit held that the exclusive private-jet service NetJets is a common carrier by air under the RLA and therefore exempt from FLSA overtime provisions. *Thibodeaux v. Exec. Jet Int'l, Inc.*, 328 F.3d 742, 753 (5th Cir. 2003). Helicopter fleets supporting the offshore energy industry are no different. Faced with *Thibodeaux*'s binding holdings that (a) common-carrier status is compatible with servicing a group of customers who must sign longer-term contracts before flying, and (b) the RLA has a "whole entity focus" that considers the company and affiliated

1

companies as a whole, the Opposition cites no contrary authority. In fact, the Opposition does not cite *a single RLA case from any jurisdiction* accepting its arguments and denying common-carrier status. Unable to escape *Thibodeaux*'s application, Plaintiffs' claims must be dismissed.

For the same reasons that Bristow is a common carrier by air and entitled to summary judgment, Bristow Holdings is too, under the RLA's "whole entity focus." Defendants' Motion presented additional, non-RLA arguments regarding Bristow Holdings' non-employer status, willfulness, and good faith, MSJ 19–21, that would be moot if the RLA exemption applies. However, given Plaintiffs' position that "the sole issue contemplated for this motion was the RLA exemption," Opp. 23, Defendants are amenable to reserving their non-RLA arguments for a future motion, if necessary.

## ARGUMENT

**A.    The Parties Do Not Dispute Any Material Fact.**

The parties dispute the RLA's applicability, not the underlying factual record. The Opposition does not challenge any material facts in the Motion, nor do Defendants challenge the material facts in the Opposition.[1] That is not to say the parties agree on every single fact, but the record of facts that bear upon the RLA's applicability is clean and undisputed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). Rule 56 "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

---

[1] Plaintiffs' Statement of Contested Material Facts includes a pure statement of law drawn from non-RLA case law that, as explained further below, is not applicable to this case: "Whether a carrier is a common or private one is dependent on the nature of its tender. If a carrier seeks to serve a particular class of individuals, it is a private carrier. A carrier which invites the general public is a common carrier." Pls.' Stmt. of Contested Material Facts at ¶ 9 (quoting *Dagon v. BNSF Ry. Co.*, No. 19-CV-00417-JPG, 2020 WL 4192348, at *6 (S.D. Ill. July 21, 2020)). That entry is an inaccurate statement of the law applicable to this case, not a fact.

properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in original). Here, the material facts are undisputed and ripe for adjudication as a matter of law under the *Woolsey* test.

The Opposition and Plaintiffs' Statement of Contested Material Facts nonetheless apply some linguistic spin to the undisputed facts. The Opposition states that Bristow "refuses service" to and "excludes (and admittedly rejects)" companies who have not joined the SAR/Medevac consortium. Opp. 6–8. Similarly, the Statement of Contested Material Facts states that Bristow's SAR/Medevac service "is *limited to* the fifteen members of their consortium." Pls.' Stmt. of Contested Material Facts at ¶ 3 (emphasis added).

These assertions are only attempts to twist an undisputed fact: as of January 2023, customers must join Bristow's SAR/Medevac consortium to use SAR/Medevac flights. Defs.' Stmt. of Uncontested Material Facts, Dkt. 92-1, at ¶ 19. The Opposition cites no evidence supporting the exclusionary spin it applies to this fact. For instance, the Opposition uses the language, "their SAR operation in the United States is *limited to* the fifteen members of their consortium," Pls.' Stmt. of Contested Material Facts at ¶ 3 (emphasis added), but to the extent this phrasing suggests the SAR/Medevac service is limited to fifteen members, the Opposition cites no evidence, and there is none.

More importantly, aside from brief comments regarding Bristow's website, the Opposition does not respond to the evidence that Bristow constantly works to *grow* both its Oil and Gas Transport and SAR/Medevac customer base. There can be no dispute that Bristow's two senior managers of business development interface with potential customers at industry events, participate in networking and relationship-building (e.g., lunches and sporting events), collect market intelligence, and make "cold calls" to potential customers, among other activities. MSJ 6–

3

7, 14–15. As Kade Monlezun testified, "my job . . . on the business development side is to bring in as many customers as I can and grow the revenue, and that's what I try to do every day." *Id.* at 6, 14. The Opposition does not respond to *any* of this evidence—evidence that conclusively demonstrates Bristow does not "reject[]" and "refuse[] service" to potential SAR/Medevac customers; it only requires them to sign longer-term agreements before availing themselves of Bristow's services. RLA common carriers may do so under blackletter Fifth Circuit law, as described in the next section.

**B.    The Opposition Confirms that Plaintiffs' Claims Are Foreclosed by Existing Law.**

Faced with the Fifth Circuit's *Thibodeaux* decision that governs this case, the Opposition makes little attempt to distinguish *Thibodeaux* and offers no contrary authority. Indeed, the Opposition does not cite a single RLA case from any jurisdiction denying common-carrier status for the reasons Plaintiffs point to here. Instead, the Opposition relies on cases that either did not even rule on the RLA exemption or are imported from non-RLA jurisprudence. Opp. 6, 16, 19–20; Pls.' Stmt. of Contested Material Facts at ¶ 9. If there were authority allowing Plaintiffs to overcome the RLA exemption, the Opposition would have cited it, but there is none. Lastly, the Opposition argues that the National Mediation Board decisions and union collective bargaining agreements are non-binding on this Court, but the Motion agreed and acknowledged that point. The Motion, like *Thibodeaux*, nonetheless noted these sources as relevant.

***Thibodeaux.*** *Thibodeaux* directly forecloses Plaintiffs' arguments, and the Opposition fails to explain why it should not apply here. Of *Thibodeaux*'s several relevant holdings, two are particularly on-point. First, *Thibodeaux* held that the NetJets private-jet service that served a defined group of customers who entered substantial contracts (e.g., a 5-year lease agreement) to obtain access to NetJets—i.e., a consortium—offered its services "indiscriminately" and was a RLA common carrier by air. 328 F.3d at 746–47, 753. The Opposition only responds that "the

4

word 'consortium' (or a synonym) is not found" in *Thibodeaux*, Opp. 17, but *Thibodeaux* described NetJets' consortium in detail, choosing to call it "persons or entities participating in a program known as 'NetJets.'" 328 F.3d at 745–47.

The Opposition's repeated arguments that Bristow is not a RLA common carrier because the public or non-consortium-members cannot call Bristow and immediately book a flight therefore fail under *Thibodeaux* because the same was true of NetJets. *E.g.*, Opp. 2 ("Bristow's own witnesses admit that any member of the public, or any Gulf of Mexico oil company, that called Bristow requesting a SAR or medevac flight would be turned down as ineligible for transportation"); *id.* at 5 ("Bristow does not operate a 911-style service, where anyone in the Gulf with a medical emergency (and the ability to pay) may call a number and request a pick-up."); *id.* at 17 ("[I]t is undisputed that Bristow is <u>not</u> willing to transport a medical patient within the Gulf of Mexico for any person or entity who is not already a member of its exclusive consortium. That should end the analysis . . . .").

Second, *Thibodeaux* held that the RLA has a "'whole entity' focus" and therefore considered three affiliated corporations together when applying the *Woolsey* test, rejecting the plaintiff's argument that the Court should evaluate the defendant's "operations narrowly rather than focusing on the NetJets program as a whole." 328 F.3d at 751–52. The Opposition not only asks the Court to construe Bristow's operations narrowly, but even to focus on one division within Bristow U.S. LLC. Opp. 20–21. The Opposition bases this argument on Bristow Area Manager Jason Glynn's testimony that there is a "true division" between Bristow's Oil and Gas services and SAR/Medevac services, *id.*, but (a) cites no authority that the Court can or should slice and dice a single company's divisions under the RLA, and (b) does not attempt to propose a standard the Court should apply when determining whether or how to split apart a company for RLA analysis

5

(because there is none).[2]

The Opposition's response to *Thibodeaux*'s whole-entity holding also misreads the case. The Opposition states that *Thibodeaux*'s consideration of several corporations together "was based on the specific fact that, in order to obtain NetJet's services, a customer had to sign up for all three." Opp. 21. *Thibodeaux* does not say that. To the contrary, *Thibodeaux* explains that of the three affiliated corporations in question (EJI, EJA, and Executive Jet Services), customers enter contracts "with *either* EJI *or* EJA, depending on the type of aircraft" they wished to fly aboard. 328 F.3d at 747. The Opposition also asserts that "the Fifth Circuit noted that the 'whole entity' line of cases was 'not entirely appli[c]able' regarding 'aircraft for the transpor[t]ation of passengers,'" Opp. 21, but the quote from *Thibodeaux* was a stepping-stone observation as the Court, in the next sentence, held that the RLA's "'whole entity' focus" indeed applied to NetJets—the holding that applies here. *Thibodeaux*, 328 F.3d at 752. The Opposition accordingly cannot evade *Thibodeaux*'s binding holdings, and the Court should decline Plaintiffs' invitation to ignore or mischaracterize controlling precedent.

***Priority 1.*** The Opposition relies on *Landry v. Priority 1 Air Rescue Operations, Arizona LP*, No. 2:15-cv-06979-JTM-SS (E.D. La.), a case that did not rule on any FLSA exemption and has no written opinion. The Opposition cites a minute entry noting that a fairness hearing was held and the parties' settlement was approved. Opp. 16 (citing *Priority 1*, Dkt. 24). A written opinion would have explained that Priority 1 does not operate flights at all, but rather "*provides* paramedics, hoist operators, and other personnel for air ambulance services." *Priority 1*, Dkt. 1, Compl. ¶ 8. *Priority 1* accordingly has no relevance to this case.

---

[2] In any event, the divisions are not that separate. Glynn is the Area Manager for both divisions, Mot., Ex. C, Glynn Dep. 12:23-13:5, and Monlezun testified that he does business development for both divisions, Mot., Ex. J, Monlezun Dep. 10:2-15.

6

The existence of a "bona fide dispute," moreover, does not aid Plaintiffs. "The primary focus of the Court's inquiry in determining whether to approve the settlement of a FLSA collective action is . . . ensuring that an employer does not take advantage of its employees in settling their claim for wages." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008). The "bona fide dispute" exists only where there is doubt that *plaintiffs* could succeed on their claims:

> If no question exists that the plaintiffs are entitled under the statute to the compensation they seek . . . , then any settlement of such claims would allow the employer to negotiate around the statute's mandatory requirements. Without a bona fide dispute, no settlement could be fair and reasonable. *Thus some doubt must exist that the plaintiffs would succeed on the merits through litigation of their claims.*

*Id.* at 719–20 (emphasis added). The existence of a bona fide dispute in *Priority 1* therefore means there was uncertainty about the merits of the plaintiffs' claims, demonstrating the weaknesses, not the strengths, of those claims.

***Non-RLA Case Law.*** The Opposition repeatedly cites non-RLA case law using the term "common carrier." Opp. 6 (in the same sentence, combining quotes from *Thibodeaux* and a case interpreting an insurance policy, *Semon v. Royal Indem. Co.*, 279 F.2d 737, 739 (5th Cir. 1960)); Pls.' Stmt. of Contested Material Facts at ¶ 9 (quoting FELA case *Dagon v. BNSF Ry. Co.*, No. 19-CV-00417-JPG, 2020 WL 4192348, at *6 (S.D. Ill. July 21, 2020)). At most, this case law shows that the term "common carrier" appears in a variety of contexts and can mean different things in different settings, highlighting why this Court should apply RLA precedent here and not mix and match standards from different statutory and regulatory contexts that also use the term "common carrier."

The Opposition relies most prominently on the FELA case *Huntley v. Bayer MaterialScience, L.L.C.*, 452 F. App'x 453 (5th Cir. 2011). Opp. 19. FELA cases are particularly

7

unpersuasive in the RLA context because of the different policies behind and structures of those laws. The goal of FELA is "to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees. A primary purpose of the Act was to eliminate a number of traditional defenses to tort liability and to facilitate recovery in meritorious cases." *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561 (1987). FELA is broadly worded and "has been construed even more broadly" since it is a "remedial statute" entitled to "liberal construction in order to accomplish [Congress'] objects." *Id.* at 561–62. "The RLA, by contrast, provides a comprehensive framework for the resolution of labor disputes in the railroad industry." *Id.* at 562. "[T]he RLA does not mention the FELA or otherwise deal with the subject of tort liability. Rather, the RLA establishes elaborate administrative procedures for the resolution of both major and minor labor disputes." *Id.* It has not been accorded any special broad construction.[3] Because Plaintiffs have no favorable RLA case law and face a binding, dispositive Fifth Circuit RLA case, they pivot to import inapplicable FELA case law.

    ***NMB Decisions and CBAs.*** The Opposition argues that the National Mediation Board decisions and collective bargaining agreements are non-binding on this Court. Opp. 13–15. Defendants agree and acknowledged in the Motion that these sources are "not dispositive of the *Woolsey* test." MSJ 15. They are noted because they show the consensus of the federal agency that administers the RLA, Bristow, and Bristow's former unions—they all agree that Bristow is a RLA common carrier by air. The Fifth Circuit noted the same sources in *Thibodeaux*. 328 F.3d at 746 ("The maintenance employees' terms and conditions of employment are governed by a

---

[3] *Huntley* is also factually dissimilar to this case. The *Huntley* defendant's transportation operations—which took place entirely within its private facility and only assisted with moving railcars to a common carrier, 452 F. App'x at 460—have no resemblance to Bristow's passenger transportation, air ambulance, and SAR/Medevac operations.

collective bargaining agreement negotiated pursuant to the terms of the RLA."); *id.* ("[T]he NMB has ruled on several occasions . . . that EJA is covered by Title II of the RLA and therefore subject to the jurisdiction of the Board"). The factual record in this case establishes that the consensus is accurate.

## C.    Bristow Holdings Is Entitled to Summary Judgment for the Same Reasons as Bristow.

The Motion explained that Bristow Holdings is entitled to summary judgment both (a) for the same reasons as Bristow, under the RLA's "whole entity focus," and (b) because Bristow Holdings was never Plaintiffs' employer. MSJ 19. The Opposition concedes that if the RLA exemption applies to Bristow, then it also applies to Bristow Holdings. Accordingly, the Court should grant summary judgment to both Defendants. *Id.*

The Opposition only disputes whether Bristow Holdings has ever been Plaintiffs' employer, claiming the statement in Mr. Glynn's declaration that "Bristow Holdings U.S. Inc. is a holding company with no employees" is a "classic statement of legal conclusion" without "any underlying factual predicate." Opp. 22. That Bristow Holdings is a holding company with no employees is a fact, not a legal conclusion. Nonetheless, because the Opposition contends that the pending motion for summary judgment should only address the RLA exemption, *id.* at 22–23, Defendants are amenable to reserving any question over whether Bristow Holdings employed Plaintiffs for future dispositive motion practice, if necessary.[4] If the Court finds that Bristow and Bristow Holdings are entitled to summary judgment under the RLA exemption, the Court need not reach the issue.

---

[4] Defendants understand Plaintiffs' objection to consideration of non-RLA issues at this stage to mean Plaintiffs will not object to Defendants' filing of dispositive motions on non-RLA issues at a future time acceptable to the Court, if necessary.

**D.    Defendants Are Amenable to Reserving Any Issue Over Willfulness or Good Faith for a Future Dispositive Motion Stage, If Necessary.**

Defendants moved for summary judgment on willfulness and good-faith issues, which impact the statute of limitations and availability of liquidated damages, respectively, MSJ 19–21, as a belt-and-suspenders measure given the dispositive motion deadline. As with whether Bristow Holdings employed Plaintiffs, given Plaintiffs' position that the pending summary judgment motion should only address the RLA exemption, Opp. 23–24, Defendants are amenable to reserving the willfulness and good faith issues for future dispositive motion practice, if necessary. If the Court grants summary judgment to Defendants under the RLA exemption, the Court need not reach the willfulness and good-faith issues.

## CONCLUSION

The Court should grant summary judgment to Defendants on Plaintiffs' claims and grant Defendants all other relief to which they may be entitled.

Respectfully submitted, this 4th day of April, 2025.

| | |
|---|---|
| *s/ Andrew Baer* | Danny David (admitted *pro hac vice*) |
| Andrew Baer (#35638) | TX Bar No. 24028267 |
| Andrew.baer@jacksonlewis.com | Scott M. Nelson (admitted *pro hac vice*) |
| Margaret Zazulak (#38433) | TX Bar No. 00797145 |
| Margaret.Zazulak@jacksonlewis.com | Louis E. Layrisson, III |
| JACKSON LEWIS P.C. | Bar No. 31829 |
| 601 Poydras Street, Suite 1400 | Frank Mace (admitted *pro hac vice*) |
| New Orleans, Louisiana 70130 | TX Bar No. 24110609 |
| Telephone: (504) 208-1755 | BAKER BOTTS L.L.P. |
| Facsimile: (504) 208-1759 | 910 Louisiana Street |
| | Houston, Texas 77002 |
| | Tel: (713) 229-1234 |
| | Fax: (713) 229-1522 |
| | danny.david@bakerbotts.com |
| | scott.nelson@bakerbotts.com |
| | louie.layrisson@bakerbotts.com |
| | frank.mace@bakerbotts.com |

*Counsel for Defendants*